

Yoon, District Judge

Hoppe, Mag. Referral Judge

OCT 21 2024

# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA

## COMPLAINT UNDER CIVIL RIGHTS ACT 42 U.S.C. 1983

ACTION NUMBER: 7:24-cv-00721

I. **PARTIES:**

A. **Plaintiff:**

   1. Lawrence Edward Hinchee, Jr.
      VADOC No. 2094675
      Coffeewood Correctional Center
      3521 Woods Way
      State Farm VA 23160

B. **Defendant(s):**

   1. John Reed
      Director
      Roanoke Probation Department
      305 Electric RD
      Salem, VA 24153

   2. Jane Doe No. 1
      Probation Officer
      Roanoke Probation Department
      305 Electric RD
      Salem, VA 24153

   3. Jane Doe No. 2
      Supervisory Probation Officer
      Roanoke Probation Department
      305 Electric RD
      Salem, VA 24153

   4. John Doe No. 1
      Employee, Roanoke City Jail
      340 Campbell Ave., SW

Roanoke VA 24016

5. Jane Doe No. 3
   Admitting Nurse, Roanoke City Jail
   340 Campbell Ave., SW
   Roanoke VA 24016

6. Antonio D. Hash
   Sheriff, City of Roanoke
   340 Campbell Ave., SW
   Roanoke VA 24016

7. Sgt. Kevin Williams
   Transportation Officer, Nottoway Correctional Center
   2892 Schulte Rd.
   Burkeville VA 23922

8. S.D. McCargo
   Transportation Officer, Nottoway Correctional Center
   2892 Schulte Rd.
   Burkeville VA 23922

9. Sgt. Sally Wells
   Transportation Officer, Nottoway Correctional Center
   2892 Schulte Rd.
   Burkeville VA 23922

10. Lt. UKN Claiborne
    Building Supervisor, Nottoway Correctional Center
    2892 Schulte Rd.
    Burkeville VA 23922

11. Lt. UNK Summerville
    Building Supervisor, Nottoway Correctional Center
    2892 Schulte Rd.
    Burkeville VA 23922

12. John Doe No. 2
    Housing Coordinator, Nottoway Correctional Center
    2892 Schulte Rd.
    Burkeville VA 23922

13. Major [UNK] Maurice
    Assistant, Nottoway Correctional Center
    2892 Schulte Rd.
    Burkeville VA 23922

14. John Davies
    Warden, Nottoway Correctional Center
    2892 Schulte Rd.
    Burkeville VA 23922

15. Sgt. [UNK] Hooks
    Property Officer, Coffeewood Correctional Center
    12352 Coffeewood Drive
    Mitchells VA 22729

16. Katie Souter
    PCM/IOM Coordinator, Coffeewood Correctional Center
    12352 Coffeewood Drive
    Mitchells VA 22729

17. S. Ruiz
    Grievance Coordinator, Coffeewood Correctional Center
    12352 Coffeewood Drive
    Mitchells VA 22729

18. Melvin C. Davis
    Warden, Coffeewood Correctional Center
    12352 Coffeewood Drive
    Mitchells VA 22729

19. Dr. J. Forest-Lam
    Medical Doctor, Coffeewood Correctional Center
    12352 Coffeewood Drive
    Mitchells VA 22729

20. Sgt. [UKN] Littleton
    Corrections Officer, Coffeewood Correctional Center
    12352 Coffeewood Drive
    Mitchells VA 22729

21. Lt. [UNK] Bright
    Corrections Officer, Coffeewood Correctional Center
    12352 Coffeewood Drive
    Mitchells VA 22729

22. Sgt. [UNK] Nelson
    Corrections Officer, Coffeewood Correctional Center
    12352 Coffeewood Drive
    Mitchells VA 22729

23. [UNK] Long
    Corrections Officer, Coffeewood Correctional Center
    12352 Coffeewood Drive
    Mitchells VA 22729

24. Sgt. T. Butler
    PREA Investigator/IOM
    12352 Coffeewood Drive
    Mitchells VA 22729

25. Unknown
    Kitchen Manager
    12352 Coffeewood Drive
    Mitchells VA 22729

26. Chadwick S. Dotson
    Director, Virginia Department of Corrections
    PO Box 26963
    Richmond VA 23261

## II. PREVIOUS LAWSUITS

None.

## III. GRIEVANCE PROCEDURE

A. At what institutions did the events concerning your current complaint take place:

**Roanoke City Probation; Roanoke City Jail; Nottoway Correctional Facility; and Coffeewood Correctional Center.**

B. Does the institution listed above have a grievance procedure?  YES [XX]

C. If your answer to "b" is yes:

1. Did you file a grievance on this complaint? YES [XX]

2. If so, where and when:

| | |
|---|---|
| Roanoke City Probation: | 06/23/22 - 10/18/22 |
| Roanoke City Jail: | 10/18/22 - 09/21/23 |
| Nottoway Correctional Facility: | 09/21/23 - 01/03/24 |
| Coffeewood Correctional Center: | 01/03/24 - present |

3. What was the result?

4

> **Roanoke City Probation:** Verbal complaints. Arrested and sent to jail.
> **Roanoke City Jail:** PREA Complaint. Investigated. Founded.
> **Nottoway Correctional Facility:** Written complaints. No responses. Grievance. Unfounded. PREA. Investigated. Unfounded.
> **Coffeewood Correctional Center:** Written complaints. Grievances. Unfounded. One overturned determined resolvable. PREA complaint. Investigated. Unfounded.

4. Did you appeal? **YES [XX]**

> 5. Result of appeal:

> **See No. 3 above. Note: PREA investigations cannot be appealed.**

D. If there was no prison grievance procedure in the institution did you complain to the prison authorities?

> **No [ X ] (at Roanoke City Probation).**

If the answer was yes, what steps did you take?

> **N/A**

E. If the answer was no, explain why you did not submit your complaint to prison authorities:

> **At Roanoke City Probation:**

> **I complained to my therapist at sex offender therapy as to the issues I was facing with my probation officer. I also discussed the fact that I felt as if I didn't trust him. I felt very uneasy around him. Like I had to walk on "egg shells." I also brought this up in discussions with my therapist and psychiatrist at the Veterans Administration Hospital in Salem, VA. There were times in which our meetings were so hot and heated I would have to call the Veterans Crisis Line for support due to the stress, anxiety and inability to communicate with my probation officer. As far as filing a grievance, I wasn't aware of any grievance procedure. I wasn't provided with that information. This was infliction of emotional distress. See Rating for PTSD diagnosis.**

> **At Nottoway Correctional Facility:**

> **Grievance not filed against Nottoway for assaults, but for the cuffing and cuff boxes being left on for over six hours. PREA filed for sexual assault on January 18, 2024, but was determined to be UNFOUNDED. Letters sent to building supervisor and Assistant Warden that I was being extorted for my canteen due to my charges and sexuality. I was assaulted due to my charges and sexuality. The other inmates somehow found out my charges. I told them I was gay. See letters to Lt. Sommerville, Watch Commander and Major Maurice. See journal entries**

5

concerning assaults and extortion.

## IV. STATEMENT OF CLAIM

As to Defendants John Reed (Def. 1), Jane Doe No. 1 (Def. 2), and Jane Doe No. 2 (Def. 3) at Roanoke City Probation:

On January 3, 2022, in Arapahoe County Court, Colorado, I accepted a plea deal for sexual exploitation of a child/distribution/publication/sell and was sentenced to fifteen years' probation. The court allowed me to serve my probation in Virginia.

Facts:

1). My first application for interstate compact was denied by both (Def. 1) and (Def. 2) with no stated reason given

2). Defendant No. 1, John Reed, called me and stated Roanoke VA did not discriminate, and said all applications for transfer were given serious consideration. However, shortly after this conversation, my second request for transfer was also denied. This was infliction of emotional distress.

3). My second application had been sent to Roanoke, VA probation with a signed lease for 638 Highland AVE S.E, Roanoke, VA 24013. My landlord stated that both (Def. 1) and (Def. 2) showed absolutely no interest in approving my transfer.

4). Roger Fuller a retired Roanoke City Police officer had a garage apartment located at 1737 Arlington RD S.W., Roanoke, VA 24016, for five hundred dollars a month. My probation officer in Colorado, Tammy Sharp, knew I had a hard time making meetings because I was living in a homeless shelter over twenty miles from her office, was in poor health, and knew I could not afford to rent an apartment in Colorado. I filed a third request for a transfer to Virginia. Tammy Sharp contacted Roanoke VA probation and asked if they were going to take my transfer request seriously, before she let me apply for a third time. After forty-five days, my third transfer request, was subsequently denied, by (Def. 2).

5). Tammy Sharp, probation officer in Arapahoe County, CO spoke with Roger, who explained that Roanoke City probation showed "absolutely" no interest whatsoever in approving my transfer. Their excuse for denying my application was Roger never called them back, but he called them twelve times. After speaking with Roger, Tammy called the Colorado interstate compact coordinator, who called the VADOC interstate compact coordinator who spoke directly with Roanoke VA probation, therefore; forcing my transfer.

6). I was offered a job in Roanoke stocking coolers at two hundred-sixty dollars a week. (Def. 3) Jane Doe No. 2 confirmed I would not be running a cash register or having any interactions with any customer under the age of eighteen. My hours were from six pm to ten pm, seven days a week, except when I had therapy. Since I had no transportation, another employee always gave me a ride home. This was so I was not out later than my curfew. (Def # 3) Jane Doe No. 2 approved me working at the store.

6

7). When I reported to probation for my meeting with (Def. 2) Jane Doe No. 1, I was told she was no longer with probation and Jane Doe No. 2 was to became my probation officer.

8) When I reported for my second meeting, I was told defendant (Def 1) John Reed would be my probation officer until a new officer could be hired and trained. I took a urine test and set another appointment three weeks later. Defendant Reed made a surprise visit to my apartment. I was not home, but called him, and he said, "thanks for calling me back."

9). My third meeting with Roanoke VA probation was terrible. This meeting was nasty, heated, and intense. There were eight individuals from probation as well as the state police in this meeting I was driven home by probation around four pm to have my apartment searched. This caused me to miss a mental health appointment. (Def. 1) John Reed said he would write a letter to the Veterans Administration if necessary, because they had confiscated my cell phone. They didn't leave until after six pm and Def #1 Mr. Reed was still threatening to "haul my ass out the front door to jail." This was infliction of emotional distress, increased anxiety.

10). (Def. 1) John Reed, found pictures of prepubescent boys on my phone. Mr. Reed threatened to have me arrested and thrown in jail. He was rude, condescending, belligerent, called me a "sexual pervert, deviant, and predator." He said I was to start sex offender therapy immediately and Roanoke VA probation would pay for it. He also said, "after seeing these pictures, Hinchee, I will write a letter to the judge saying you need therapy, not prison. I'd be willing to do that for you."

11). Probation found two unity bears from the care bears collection for the LGBTQIA+ community. Probation stated being a sex offender I had no business with these items. I also had a plastic toy soldier, which was given to me by my grandmother when I was six months old. 1 was told I should not have that as a sex offender. I was questioned about the pictures of the children in my apartment. I said they were my children, grand-children, nieces and nephews. I felt like I was being violated. See VA rating for PTSD. This was infliction of emotional distress.

12). (Def. 1) John Reed told me I had to close all of my social media accounts. I explained I wrote on vocal, medium, Kindle Vella, and I had a book published on Amazon. I tried to explain this was an additional income source of approximately two hundred dollars a month for me. Def # 1 John Reed said, " I don't care how much additional income you make, close it down or you're going out the back door in cuffs." This violated my fourteenth amendment rights to life, liberty, and property. It also violated my first amendment rights as an author, journalist and photographer and free speech.

13). (Def. 1) John Reed said, I was not allowed to use insta-cart to purchase groceries, however; I had no transportation but public transportation and I wasn't allowed to use Uber according to the terms and conditions of my probation. This violated my fourteenth amendment rights to life, liberty, and property. See attached terms and conditions of probation.

14). On August 10, 2022, John Reed told me my job ended that day. I was no longer allowed to work at A and A Cash Mart. He said "I know that store and kids went into that store, well kids go into Kroger, but I can shop there. I lost an additional one thousand forty dollars in income that day. Def # 1 John Reed changed my curfew from ten pm to six-thirty pm. This violated my fourteenth amendment rights to life, liberty property. This also violated my eighth amendment rights against cruel and unusual punishment.

15). I asked if I could if I could go to the E-Branch of the Roanoke City Public Library to get books, return books. (Def. 1) John Reed said, "No, if I went to the E-Branch of the Roanoke City Public Library he would have me arrested." It was a location to where I could pick-up and drop-off my library books. Since I wasn't allowed to use the internet to purchase books, I had to rely on my family for that. But he allowed me to go to the Famers Market to get my fruits and vegetables, however; I was told in no uncertain terms could I not attend the Pride Parade or events downtown. As a gay man this violated my civil rights under the first amendment of right to assembly.

16). Part of my probation terms prevented me from attending church. Since Roanoke City Probation would not allow me access to the internet, I could not access church on hulu, pluto television. But I was allowed to keep the subscriptions. Since there are no churches that don't have children in attendance, I have to stay home on Sundays. This violated my first amendment rights to freedom of religion. See attached probation terms.

17). On September 10, 2022, I had a polygraph test. I passed. (Def. 3) Jane Doe # 2, supervisor said congratulations." <u>She reminded me of the necessity to clean out my cloud account of the pictures and videos still there so I would not catch a violation. She also advised me to clean up all hard disc drives which had anything backed up on them that would cause a violation."</u>

18). Two weeks later, (Def. 1) John Reed called and said, " I need you to report to probation before four pm." It was nearly three pm. I asked, "am I in trouble?" John Reed said, "have you done anything to be in trouble for?" and I said, "no." I called back and said, "I can't make it to probation by four because the next bus into town isn't until three-fifteen pm and I wouldn't be there until four-thirty." He said, I thought you had a car." I said, I do, but it is at Affordable and Dependable Auto Repair on Williamson Road, inoperable." He said, "your Facebook account is still active and it needs to be closed now or else your ass is going to jail." To prove his point, he had six police cars patrolling near my apartment. I told him it took thirty days to deactivate, I had to call my daughter to get her to close my account for me. I had to make another phone call to the Veterans Crisis line because my nerves were beyond frayed from dealing with Mr. Reed. This qualified as harassment, threats, intimidation and infliction of mental distress, caused unnecessarily by my probation officer. With my diagnosis of PTSD and BIPOLAR 2, this translated into disaster. See VA Rating for PTSD and Roanoke City Jails diagnoses of bi-polar 2 disorder.

As to Defendants (Def. 4), Jane Doe # 3, (Def. 5), John Doe # 2, and, (Def. 6), Antonio D. Hash, Sheriff at Roanoke City Jail:

19). On December 1,2020, when I was arrested my blood pressure was 275/169. (Def. 4 Jane Doe #3) Admitting Nurse, said, "my blood pressure was a concern but not emergency room concern." I should have been taken to the emergency room and seen by a doctor. This violated my rights of access to adequate medical care, Civil Rights, and cruel and unusual punishment and the Americans with Disabilities Act

20) As to (Def. 5), John Doe #2, On December 20, 2020, I was in a holding cell overnight without a blanket with a temperature of ten degrees and snowing. This was also during the height of COVID-19. Every-time I asked for a blanket I was told we weren't allowed to have them in a holding cell per policy. This violated the eighth amendment of cruel and unusual punishment

8

and violation of conditions of confinement.

21). On October 18, 2022, I was booked into Roanoke City Jail on ten counts of possession of child pornography. There were numerous issues with the food served: we were never served fresh fruit the entire time and a lot of times the food was too salty to eat due to my high blood pressure. The closest thing we had to fresh fruit was apple sauce. I was in Roanoke City Jail for three hundred forty-six days. This violated conditions of due process, confinement and was cruel and unusual punishment. This also violated the Americans with Disabilities Act.

22). Apple sauce was given to diabetics since they couldn't have cake. Being diabetic, I didn't qualify for the snack bag which had a piece of fruit in it, since I wasn't insulin dependent, however; in other institutions, I did receive the diabetic snack bag. This violated conditions of due process, confinement and was cruel and unusual punishment. This also violated the Americans with Disabilities Act.

23). We were also served what is called "meat rock." It's a piece of meat made to resemble hamburger, but the box says, "not for human consumption." The DOJ has stated that is a violation of our rights and the prisons are to do away with their entire stock of meat rock. Since there's a deadline and the prisons have been giving us a steady dose of this meat substitute. This violates my eighth amendment rights against cruel and unusual punishments. This violated conditions of due process, confinement.

24). On September 20, 2023, I filed a PREA claim against an inmate. He kept grabbing his crotch and calling me names such as "*HONEY PIE, MISSY POO, CUP CAKE, SWEET CHEEKS.*" And every time he would walk past myself and another inmate playing cards, he would start singing, "*TREAT HER LIKE A LADY.*" The jail immediately removed inmate John Doe from the pod. But the emotional damage had already been done. The PREA Complaint was FOUNDED. Please see PREA *LETTER* attached to this claim. This was infliction of emotional distress.

As to Defendants (Def. 7), Sgt. Kevin Williams (Def. 8), S.D. McCargo, (Def. 9), Sgt. Sally Wells, (Def. 10), Lt. UKN Claiborne, (Def. 11), Lt. UNK Summerville, (Def. 12), John Doe No. 2, (Def. 13), Major [UNK] Maurice, (Def. 14), John Davies, at Nottoway Correctional Facility:

25). As to (Def On September 21, 2023, I was transferred to Nottoway Correctional Center. When I arrived at Nottoway I was asked if there was any reason why I shouldn't be in general population. I said, "yes, my charges and I'm gay." She wrote it down on the intake form, however; I was still placed in general population. My charges of possession of child pornography put me at a higher risk of being assaulted, yet the facility did nothing to protect me.

26). I had one inmate trying to extort me because of my charges. I had another inmate extorting me for sex as a means of protection. It wasn't anal, just oral. Mr. Raymond stood in the door of my cell and said, "Don't fucking lie to me, what are your charges? I told him my charges. He said he would protect me, but I would have to let him fuck me anytime he wanted, as well as giving him canteen periodically. Then he had me sit on the toilet in my cell and perform oral sex on him. He told me to get some Vaseline on my next commissary order, which I did. He had me perform oral sex on him numerous times afterwards, but never anal because another inmate named "TRU" was trying to extort me financially. I filed a PREA complaint, it was unfounded due to late filing of the complaint. See PREA letter

9

27). I had written LT. Sommerville my building supervisor, on October 12, 2023 and explained what was going on with the financial extortion. I received no response. I sent it as an anonymous letter. One week later I sent the same letter and a similar letter to Major Maurice, the Assistant Warden. Nottoway Correctional Facility failed to protect me from other violent inmates. They violated the Americans with Disabilities Act, The Equal Protection Clause, my eighth amendment rights against cruel and unusual punishment, they were negligent in the performance of their responsibilities of protecting all inmates against violence and extortion, and this also affected my mental health when I was locked down for seven days for no reason other than being physically assaulted. See letters dated 10/12/23

28). On October 12, 2023, I had received my first commissary order. About or around 1600 hours three members from the Bloods gang came into my cell, forced me against the wall stating, "we know you're in here for rape so don't fight us bro." They took over half of my commissary order. I had bruises from my wrists to my arm pits from where I was held against the wall. I lost forty-five dollars in commissary. These men knew I was an LGBTQIA+ Inmate, I told everyone on day one. This violated the Equal Protection Clause, my eighth amendment rights against cruel and unusual punishment, they were negligent in the performance of their responsibilities of protecting all inmates against violence and extortion. The staff knew or should have known that these men were a danger to the facility.

29). On October 26, 2023, around 1530 I was in my cell writing a letter home. Four members of the Crips gang came into my cell physically assaulted me. I was examined by medical, because I had bruising on my face, eyes, and knots on the left side of my head, plus they were worried about a ruptured ear drum. I was removed from my pod then placed in restrictive housing unit (RHU). They placed two of the four attackers in the same unit. This violated the equal protection clause of the US Constitution and my fourth amendment rights. Being violently assaulted in prison is not part of the penalty criminal offenders pay for their offense against society, according to institutional policy. The prison is required to protect us from violence and harm, which Nottoway failed to perform their due diligence in this area. The staff of Nottoway Detention Center is "charged with the custody and care of all inmates in their jurisdiction."   The staff knew or should have known that these men were a danger to the facility.

30).   On January 3, 2024, there were twenty-five inmates transferred from Nottoway Correctional Facility to Coffeewood Correctional Facility. At seven am we were all handcuffed with leg shackles and lock boxes on our hand cuffs. Our bus was delayed until thirteen-thirty. We were given our lunch, but officers, S.D. McCargo, Kevin Wells and Sally Wells, would not take off our lock boxes and cuffs so we could eat. I told S.D. McCargo I had to use the restroom, but not to urinate. I was told to sit down and hold my butt cheeks together. I ended up with diarrhea and couldn't hold it any longer by the time I arrived at Coffeewood. When I filed a written complaint, the response came back that four hours was plenty of time to use the restroom. This violates the eighth amendment rights against cruel and unusual punishment. See written complaint. See Journal entry.

 As to Defendants: (Def. 15), Sgt. [UNK] Hooks, (Def. 16), Katie Souter, (Def. 17),S. Ruiz, (Def. 18), Melvin C. Davis, (Def. 19),   Dr. J. Forest-Lam, (Def. 20), Sgt. [UKN] Littleton, (Def. 21), Lt. [UNK] Bright, (Def. 22), Sgt. [UNK] Nelson, (Def. 23), [UNK] Long, (Def. 24), Lt. T. Butler: Coffeewood Correctional Center:

31). On January 14, 2024, when I received my property I was missing thirteen notebooks, an envelope that was titled "books in progress" I spent four weeks at about two or three hours each meeting with mental health, and Mr. Frazier going through my writings to determine what I could and couldn't keep. What I wasn't allowed to keep I was told either I had to send it home or shred it. I chose to send it home, however; I will never be able to use that material I had written, if I do I will end up in prison again. See PTSD rating from Veterans Administration. This constitutes negligence or gross negligence; intentional infliction of emotional distress; medical malpractice; breach of contract; cruel and unusual punishment in violation of Section 9, Article 1 of the Constitution of Virginia; and a violation of my constitutional rights under the First Amendment of the United States Constitution. And the fourteenth amendment of life, liberty and the pursuit of property.

32). The missing picture from People Magazine of the group "BTS Boys" was a small cut out of the Korean group male band of eighteen to twenty-five-year-old men. I was told I could have a miniature poster, but the picture was classified as contraband and I was given a choice of mailing it home or shredding it. This constitutes negligence or gross negligence; intentional infliction of emotional distress; medical malpractice; breach of contract; cruel and unusual punishment in violation of Section 9, Article 1 of the Constitution of Virginia; and a violation of my constitutional rights under the First Amendment of the United States Constitution.

33). The book Candy makes gift is a story about the first candy cane. It is passed out at Christmas time. It was given to me by the chaplain at Nottoway. Mental Health said, "due to my charges I wasn't allowed to have the booklet because it had images of children in it." They implied that the grand-father that was portrayed could be a sexual predator for all they knew. This is discriminatory in nature.

34). I had written about the physical, mental and sexual abuse I suffered as a child. It was detailed and descriptive. I was accused by the sex offender specialist, Mr. Frazier of writing this type of material for sexual gratification, eroticism purposes. When I denied that accusation, Mr. Frazier said, "I'll take your word for it, but I don't believe you." See PTSD rating from Veterans Administration. This constitutes negligence or gross negligence; intentional infliction of emotional distress; medical malpractice; breach of contract; cruel and unusual punishment in violation of Section 9, Article 1 of the Constitution of Virginia; and a violation of my constitutional rights under the First Amendment of the United States Constitution. And the fourteenth amendment of life, liberty and the pursuit of property.

35). I had numerous books in progress. Some were bizarre, murder mysteries, a kid sold by his parents as a child bride to a man. All fictional based. This material was deemed as contraband, and I was made to send it home or shred it. I sent it home. See grievance. It was unfounded stating there was no loss as I was allowed to send it home. But I will never be able to use the material, because I will end up incarcerated again. Because the Commonwealth of Virginia will classify it as child pornography. Therefore, there is loss in both the use of the material and revenue. See PTSD rating from Veterans Administration. This constitutes negligence or gross negligence; intentional infliction of emotional distress; medical malpractice; breach of contract; cruel and unusual punishment in violation of Section 9, Article 1 of the Constitution of Virginia; and a violation of my constitutional rights under the First Amendment of the United States Constitution. And the fourteenth amendment of life, liberty and the pursuit of property.

36). I filed a grievance concerning the blowing of whistles in the building for count. But the response states DOC policy says they are to blow their whistles to announce count. Whenever I bring this to their attention they fall back on their policy and have an I don't care attitude about it. This affects both my mental health and physical wellbeing while being incarcerated. I also filed a reasonable accommodations request under the Americans with Disabilities Act, concerning this issue. This also violates the Americans with Disabilities Act. See grievance. See reasonable accommodation request.

37). On April 4, 2024, Dr. Forest-Lam every time I go for a medication review, I request to be placed on my NSAID, Nabumetone, and pain medication of Baclofen, as well as Diclofenac cream, that the Veterans Administration has prescribed for me for a service connected disability of degenerative arthritis in both knees (bi-lateral chondromalacia). Mr. Longs refusal is that he feels that I am on too many medications and it could cause kidney damage. The grievance was returned unfounded, which is in appeal at the moment. The refusal to provide all medieations that I had been prescribed, based on the premises that I'm on too many medications violates standards of care. This also violates the Americans with Disabilities Act. Negligence or gross negligence; intentional infliction of emotional distress; medical malpractice; breach of contract; cruel and unusual punishment in violation of Section 9, Article 1 of the Constitution of Virginia; and a violation of my constitutional rights under the Eighth Amendment of the United States Constitution.

38). On June 5, 2024 during a scheduled shake down week, my locker was searched by three individuals and I was cleared. Sgt. Littleton came over and told me not to sign my shake down sheet. He and an SRT officer did second shake down of my locker and tote. They read all of my books in progress and Sgt. Littleton took six books claiming they were contraband. I requested for mental health to come to the dorm so they could discuss this with the officer involved and Sgt. Littleton said go see LT. Bright and tell him you want mental health here. I went to LT. Bright and told him I wanted mental health, he stated, "I am not going to stop a major shake down for mental health to come and talk to you. He said, "I will make note of your request, however; I'm not stopping a major shakedown to call mental health for you." After they left, I went to the booth officer, Littles and he requested Dr. Howard and Ms. Hill to come and talk to me. Sgt. Littleton told me in an insolent and hateful tone, " I don't give a shit about your feelings at this point all I care about is contraband." I believe that the confiscation of my personal property, was due to personal preference due to my being an LGBTQIA+ inmate and three of the books contained sexual scenes between consenting adults of the same sex. The refusal to provide mental health accommodations to me when requested jeopardized my mental health status since I suffer from PTSD, bi-polar 2, this violated the Americans with Disabilities Act. Also, the additional shake down constitutes targeting and harassment of an LGBTQIA+ inmate. This was infliction of emotional distress.

39). On June 23, 2024, another inmate threw an apple at my head narrowly missing me. I looked over and Sergeant Nelson was laughing. I asked him why he didn't write the inmate up and his response was, " that it had to be something major before he wrote someone up." Then he said, "I didn't write him up because he missed me.

As to Defendant: (Def 17), S. Ruiz

40). On August 8,2024 S. Ruiz wrote a charge against me for inappropriate use of state property. I

typed out a written complaint instead of hand-writing it. The result was a reprimand, however; she could have said "hey don't do this again." But I have a torn rotator, bicep tendon and carpal tunnel syndrome in my right hand/arm. At times when I'm writing my entire arm goes completely numb, therefore; I need to use the typewriter because of the numbness. The writing of the charge is outside the scope of her responsibilities/duties for this position. This is a violation of the Americans with Disabilities Act. See request for reasonable accommodation.

As to Defendant: (Def. 25), Unknown, Kitchen Manager

41). From January until March 2024, they were giving us strawberry fruit bars for a desert, with an expiration date of October 14, 2023. Giving inmates expired food is a violation of standard of care. This violated conditions of due process, confinement and was cruel and unusual punishment. This also violated the Americans with Disabilities Act.

42). The kitchen is being remodeled. So our menus are not very decent. We get peanut butter and jelly for breakfast, a steady dose of tuna packs for either lunch or dinner about three to five times a week. I have complained about this issue. When we are served our meals i.e.: cheese we are supposed to receive two full ounces. They give us two ounces by volume, thus cutting our rations to save money. This violated conditions of due process, confinement and was cruel and unusual punishment. This also violated the Americans with Disabilities Act.

43). We receive pancakes that are the size of a sand dollar when they are served. Which usually comes with either farina or oatmeal. This again forces us to eat our soups (ramens) from our commissary. Something we are told to avoid. This violated conditions of due process, confinement and was cruel and unusual punishment. This also violated the Americans with Disabilities Act.

44). The kitchen cross contaminates the food continuously. What about food allergies? This violated conditions of due process, confinement and was cruel and unusual punishment. This also violated the Americans with Disabilities Act.

45). On June 13, 2024 we were fed a chocolate scone, farina, a fruit cup of peaches, and two milks. That wasn't really much of a breakfast and they are forcing us to rely on commissary for our nutrition. This violated conditions of due process, confinement and was cruel and unusual punishment. This also violated the Americans with Disabilities Act.

As to Defendant: (Def. 26), Chadwick S. Dotson

46). The infliction of emotional distress this incarceration has caused on myself and my spouse is unimaginable. This incarceration has sped the progress of my spouse's dementia. With my spouse of forty years being in a nursing home and with me having no way of communicating with my spouse, because I can't add a nursing home's phone number to my contact list. My last communication with my spouse by phone was the day of my original incarceration of October 18, 2022. I have written my spouse numerous times since being incarcerated, but since he has rheumatoid arthritis and can barely write, has lost most of his mental faculties due to this debilitating disease. This is cruel and unusual punishment to both my spouse and myself. This also violates the Americans with Disabilities Act. The undue burden of having to worry about whether my spouse is being taken care of and having to turn over the responsibility of the power of attorney to my son, who is a general manager for Papa Johns and works seventy hours a week, plus he's my power of attorney for my financial issues, has four children, three of which are under

the age of eighteen.

47). I was also the main support for my half-sister and nephew in White Pine, TN. Both are learning disabled. My nephew's father died when he was six. He is angry at the world, including God for taking his daddy away. Today he is fourteen. I try to be a positive role model for him despite being incarcerated. But him and his mother can barely read. I have had to provide groceries numerous times to keep social services from taking my nephew from her. This incarceration is devastating to both of them, especially my nephew, because he really doesn't understand. I write and send cards for birthdays, I call as well. But it's not like being there or talking to them multiple times a day. The undue burden of having to worry about whether my nephew has been removed by social services, from my sister with learning disabilities and her son who has the exact same learning disabilities, makes this incarceration unbearable.

V.      Relief

I understand that in a section 1983 action the court cannot change my sentence, release from custody, or restore good time. I understand I should file a petition for a writ of habeas corpus if I desire this type of relief.   LEHJR

The plaintiff wants the court to:

X Award money damages in the amount: $70 Million Dollars

X Grant injunctive relief: Ordering the retraining of officers concerning rights of inmates. Sensitivity training concerning the protection of LGBTQIA+ inmates. Teach officers the warning signs to look for in inmates who are being extorted and having their commissary taken. when an inmate is extorted and his commissary taken make the extortionist repay the person he extorted and make it series one hundred charge. Reestablish a new policy that doesn't include blowing a whistle inside the building to announce count. Train officers of the effect of blowing whistles inside with tinnitus sufferers. Order that the writings I had to mail home, be allowed to be returned so I can personally go through them, but without them being copied or destroyed. Remove IRP from my file. Remove Sgt. Hooks from her position as property officer either by termination or reassignment. Remove John Reed from his position at Roanoke City probation. Demote or terminate Sgt. Littleton because of his attitude towards LGBTQIA+ inmates. He has been demoted previously.

X Other: Provide writing areas in the pods for us. I am in an open dorm and can't really write peacefully. No desks are provided just three tables. They are usually taken by those playing cards and board games. With seventy-five plus inmates to share three tables, it's not too unreasonable of a request to make. But to an author like myself it makes all the difference in the world. I can't really write on my bed. Restoration of my voting and second amendment rights. Order that my right to publish on Vocal, medium and Kindle Vella, be permitted and allow me to reopen all my social media accounts. Allow me to use the E-branch of the Roanoke public library upon my release.

VI.     Places of Incarceration:

Please list the institutions at which you were incarcerated during the last six months. If you were transferred during this period, list the date(s) of transfer. Provide an address for each institution.

**COFFEEWOOD CORRECTIONAL CENTER**

**P.O. BOX 500**

**MITCHELLS, VA 22729-0500**

**TRANSFERRED IN ON JANUARY 3, 2024**

### VII.   Consent:

**Consent to trial by a Magistrate Judge:** The parties are advised of their right pursuant to 28 U.S.C. 636(c) to have a U.S Magistrate Judge preside over a trial with appeal to the U.S. Court of Appeals for the Fourth Circuit.                                                            Do you consent to proceed before a U.S. Magistrate Judge: YES [ X ]   NO [   ]

### VIII.   SIGNATURE

If there is more than one plaintiff, each plaintiff must sign for himself or herself.
Signed This ___10TH___ Day of ___SepTemBer___, 2024
Plaintiff _____

### FOR NOTARY PUBLIC'S USE ONLY:

State of Virginia [ ]   City [ ]   County of __Culpeper__ Acknowledged, subscribed and sworn to before me this __10__ day of __September__, 2024

Notary Registration Number _____

_Darenda Johnson_
Notary Public

(My commission expires __11/30/24__)

15



